IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MARSHALL WILLIAMS            :          CIVIL ACTION
                            :
            v.              :
                            :
EMC MORTGAGE CORPORATION INC.;  :
et al.,                     :          NO. 12-1215

MEMORANDUM

McLaughlin, J.                          May 3, 2013

This case is brought by the plaintiff against three defendants: EMC Mortgage Corporation, Inc. ("EMC"), Kondaur Capital Corporation ("Kondaur"), and JP Morgan Chase & Co. ("JP Morgan").

The plaintiff's home was foreclosed on and eventually sold at a sheriff's sale, and the plaintiff alleges various claims against the defendants related to that process and the treatment of his mortgage.  Specifically, the plaintiff alleges:

(1) Violation of the Truth in Lending Act;

(2) Violation of the Fair Debt Collection Practices Act;

(3) Violation of the Fair Credit Reporting Act;

(4) Fraud and Constructive Fraud;

(5) Violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law;

(6) Breach of Contract and Unjust Enrichment; and

(7) Corporate Negligence.

Each defendant has filed a motion to dismiss the complaint in its entirety for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  The Court will grant the motions and dismiss the breach of contract claim without prejudice and dismiss all of the other claims with prejudice.

I.   Procedural History

The plaintiff filed his initial complaint on March 7, 2012.  That complaint only named EMC and Kondaur as defendants. Both those defendants filed motions to dismiss, and then on August 29, 2012, the plaintiff filed his first amended complaint. The Court accepted the first amended complaint and denied the two motions to dismiss as moot.  (Docket No. 16).

The first amended complaint added JP Morgan as a third defendant to the action.  All three defendants filed separate motions to dismiss the first amended complaint.

The plaintiff then moved to file a second amended complaint.  (Docket No. 28).  The Court held an on the record telephone conference to discuss the matter with the parties and concluded that it would not be necessary to dismiss as moot all of the pending motions to dismiss.

Instead, the Court issued an order denying the

2

plaintiff's motion for leave to file a second amended complaint, but stating that it would consider the allegations made in the second amended complaint in assessing the pending motions to dismiss. (Docket No. 31).

That order also gave the parties the opportunity to file supplemental briefing on the Fair Credit Reporting Act issue, which both sides have done.

The Court held oral argument on the motions to dismiss on April 16, 2013. On April 22, 2013, the plaintiff voluntary dismissed his intentional infliction of emotional distress claim. (Docket No. 46).

II. <u>Facts as Alleged in the First Amended Complaint ("FAC")</u>[1]

On or about January 16, 1998, the plaintiff and Saxton Mortgage Company entered into a contract involving a credit transaction whereby plaintiff pledged as collateral 5447 Wyndale Avenue, a residence in Philadelphia, in exchange for a loan in the amount of $75,000. FAC ¶ 6.

EMC was assigned defendant's loan on July 15, 2004. FAC ¶ 7. On May 11, 2010, EMC assigned the security instrument

---

[1]As noted in the procedural history section, the plaintiff's motion to file a second amended complaint was denied so that the defendants would not have to file entirely new motions to dismiss. Accordingly, the Court will draw upon the FAC for the statement of facts. Notably, the facts alleged in the second amended complaint do not differ substantially from the facts alleged in the FAC.

and note to JP Morgan, who transferred the security instrument on the same day to Kondaur for an amount not less than the outstanding principal amount plus accrued and unpaid interest. FAC ¶ 7.

In 2008, EMC wrongfully declared that the plaintiff was in default because he did not have hazard insurance on the property.  FAC ¶ 9.  EMC placed insurance on the property at a very high premium and added that premium to the plaintiff's principal balance.  FAC ¶ 10.  Although the plaintiff provided a proof of insurance, EMC brought a foreclosure action in the Philadelphia Court of Common Pleas.  FAC ¶ 11.  At a final pre-trial conference, EMC and the plaintiff in principle agreed to resolve the litigation with a deal whereby EMC would reinstate the plaintiff's loan under a new re-payment plan.  FAC ¶¶ 11-14.

EMC then refused to provide a copy of the new paperwork re-instating the loan and showing the new payment plan as agreed. FAC ¶ 15.  The plaintiff tried to show up for the previously agreed upon trial date, but found that EMC had informed the Court that the trial had been cancelled.  FAC ¶ 16.

The plaintiff tried to make payments under the terms of the previous mortgage, but those payments were not accepted by EMC.  FAC ¶¶ 17-22.  EMC then declared the mortgage in default and filed a foreclosure action against the property on February 2, 2010, in the Philadelphia County Court of Common Pleas.  FAC ¶

4

25.

Since on or about June 2010, Kondaur has sent representatives, in person and by letter, to harass the plaintiff about leaving the property.  FAC ¶ 31.  Kondaur denied the plaintiff a loan modification.  FAC ¶ 40.  A sheriff sale was held on September 11, 2012.  FAC ¶ 44.

The mortgage contract contains an arbitration rider that states that controversies arising from or related to the loan evidenced by the Note shall be resolved by binding arbitration and not by court action.  FAC ¶¶ 53-54.  The plaintiff requested that the parties proceed to arbitration in July 2012, but Kondaur continuously refused.  FAC ¶ 56.

JP Morgan and EMC agreed to conduct an independent foreclosure review of the mortgage foreclosure against the plaintiff pursuant to a consent order entered into in February 2012 with the U.S. Federal Reserve System Board of Governors.  FAC ¶ 36.

III. Analysis

When evaluating a motion to dismiss, the Court accepts all well-pleaded facts in the complaint as true and draws all reasonable inferences in favor of the non-moving party, while disregarding any legal conclusions.  See Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009).

To survive a motion to dismiss, a complaint must contain sufficient factual matter that, when accepted as true, is able to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).  A plaintiff cannot rest "on a formulaic recitation of the elements" or mere "labels and conclusions," because "[f]actual allegations must be enough to raise a right to relief above the speculative level."  Twombly, 550 U.S. at 545, 555 (citations omitted).

At this point, the plaintiff is pursuing seven counts against the defendants.  The Court will discuss each count in turn.

A.   The Truth in Lending Act

The Truth in Lending Act ("TILA") "requires lenders to make certain disclosures to borrowers and gives borrowers a civil cause of action against creditors who violate these disclosures." Ramadan v. Chase Manhattan Corp., 156 F.3d 499, 500 (3d Cir. 1998).  A claim for civil damages under the TILA is subject to a one year statute of limitations.  15 U.S.C.A. § 1640(e).  That one year statute of limitations "begins to run from the date the loan closed."  In re Cmty. Bank of N. Virginia, 622 F.3d 275, 303 (3d Cir. 2010).

The defendants move to dismiss the TILA claim on the

6

grounds that it is time-barred by the statute of limitations because the mortgage transaction closed in January of 1998, therefore the statute of limitations would have run by that time in 1999.  The plaintiff did not allege a TILA claim until 2012, well after the one-year statute of limitations had run.

The plaintiff responds to the statute of limitations argument in two ways.  The plaintiff's first response is that the TILA violations were actually deceptive lending and collection practices that the defendants engaged in after the initial loan closing, namely when the plaintiff tried and failed to obtain information related to a new payment plan the parties tried to negotiate as a settlement to the foreclosure litigation.

This argument misses the point as the TILA functions to protect consumers by requiring disclosures at the time of a closing of a loan transaction; here the only loan closing that occurred was in 1998.  Actions taken after a loan closing are not properly the subject of a TILA improper disclosure claim unless they constituted another transaction, such as a refinancing, that would require new disclosures under 12 C.F.R. § 226.20.

The plaintiff's allegations that EMC and Kondaur created new transactions when they added insurance premiums and attorney fees to the plaintiff's loan balance do not fall easily within the definition of refinancing as defined by the regulation because there was no satisfaction of an existing obligation.  <u>See</u>

12 C.F.R. § 226.20 ("A refinancing occurs when an existing obligation that was subject to this subpart is satisfied and replaced by a new obligation undertaken by the same consumer. A refinancing is a new transaction requiring new disclosures to the consumer.").

The plaintiff's second argument is that equitable tolling should save his claim from being time-barred.  Equitable tolling is indeed available in the TILA context.  See Ramadan v. Chase Manhattan Corp., 156 F.3d 499(3d Cir. 1998).  The plaintiff alleges he became aware of EMC's deceptive lending and collection practices around the time EMC signed its consent order with the U.S. Federal Reserve System Board of Governors agreeing to review its mortgage foreclosure practices with respect to the plaintiff in February 2012.  The plaintiff argues that the statute of limitations should be tolled until that time.

The Third Circuit has recognized at least three situations where equitable tolling may be appropriate: (1) where the defendant has actively misled the plaintiff respecting the plaintiff's cause of action; (2) where the plaintiff in some extraordinary way has been prevented from asserting his or her rights; or (3) where the plaintiff has timely asserted his or her rights mistakenly in the wrong forum.  See Morilus v. Countrywide Home Loans, Inc., 651 F. Supp. 2d 292, 304 (E.D. Pa. 2008) applying the principles in the TILA context and citing Oshiver v.

<u>Levin, Fishbein Sedran & Berman</u>, 38 F.3d 1380, 1387 (3d Cir. 1994).  In addition, to "invoke equitable tolling, [the plaintiff] must show that [he] exercised reasonable diligence in investigating and bringing its claims."  <u>New Castle County v. Halliburton NUS Corp.</u>, 111 F.3d 1116, 1126 (3d Cir. 1997).

The situation here does not justify equitable tolling.  The defendants did not actively mislead the plaintiff with respect to the plaintiff's cause of action.  The loan closed in 1998 and if there had been improper disclosures under TILA, a timely claim should have been brought by 1999, years before any of the defendants had any interest in the loan.  Moreover, the plaintiff's heavy reliance on the consent order entered into by EMC and JP Morgan with the federal reserve is misplaced because in the consent order EMC and JP Morgan did not admit to any wrongdoing.  In addition, the plaintiff was not prevented in some extraordinary way from asserting his right and he did not timely assert his rights in the wrong forum.

The Court finds that the plaintiff's TILA claim is time-barred and will dismiss the TILA claim against all defendants with prejudice.

B.    <u>Fair Debt Collection Practices Act</u>

The Fair Debt Collection Practices Act ("FDCPA") is designed to eliminate abusive practices employed by debt

collectors.  See generally 15 U.S.C. § 1692.

The plaintiff alleges that Kondaur deceived the plaintiff into submitting personal and private information on the pretense that there would be a loan modification, but in reality there was no loan modification and Kondaur used that information to proceed with the foreclosure.  The plaintiff also argues that Kondaur failed to provide a proper notice of the amount of debt to the plaintiff as required by 15 U.S.C. § 1692g(a) and that Kondaur used unfair practices including trying to collect amounts unauthorized by the loan agreement such as interest and fees in violation of 15 U.S.C. § 1692f.

Although the plaintiff brings the FDCPA count against each defendant, the actual allegations about the FDCPA focus on the debt collection steps taken by Kondaur.  This is understandable because on May 11, 2010, EMC assigned the mortgage security instrument and note to JP Morgan, who turned around and assigned the same to Kondaur the same day.

Because they were no longer holding the security instrument, EMC and JP Morgan would not have had an interest in collecting on the debt, and the plaintiff has failed to adequately plead a claim for violations of the FDCPA against EMC And JP Morgan upon which relief can be granted.

With respect to the plaintiff's FDCPA claim against Kondaur, the plaintiff's argument fails because the FDCPA does

10

not apply to creditors collecting debts on their own behalf.  15
U.S.C. § 1692f applies to the actions of "debt collectors," which
15 U.S.C. § 1692a(6) defines as "any person who . . . regularly
collects or attempts to collect, directly or indirectly, debts
owed or due or asserted to be owed or due another."  See also
Staub v. Harris, 626 F.2d 275, 277 (3d Cir. 1980) ("The [FDCPA]
statute does not apply to persons or businesses collecting debts
on their own behalf.").

        According to the facts as alleged by the plaintiff,
Kondaur was taking steps to collect debts on its own behalf.
Therefore, the FDCPA does not apply against Kondaur.

        The Court will dismiss the FDCPA claim against all
defendants with prejudice.


        C.    Fair Credit Reporting Act

        In his proposed second amended complaint, the plaintiff
brings a Fair Credit Reporting Act ("FCRA") claim arguing that
the defendants furnished information to consumer reporting
agencies but failed to report to those agencies that the
plaintiff disputed the completeness or accuracy of that
information.  Sec. Am. Compl. ¶ 89.  In the second amended
complaint, the plaintiff stated that the defendants violated 15
U.S.C.A. § 1681s-2(a)(3).

        The defendants pointed out, and the plaintiff now

concedes, that there is no private cause of action for violations of 15 U.S.C.A. § 1681s-2(a)(3) as 15 U.S.C.A. § 1681s-2(d) limits enforcement of violations of subsection (a) to state and federal agencies.

The plaintiff explained in his response that he cited to the wrong portions of the statute and his FCRA cause of action should have been brought under 15 U.S.C.A. § 1681n and 15 U.S.C.A. § 1681o, which provide a civil cause of action for willful violation of the statute and negligent noncompliance with the statute respectively.

Even setting aside any procedural issues with how the plaintiff presented his FCRA claim, the plaintiff's revised theory has substantive defects because 15 U.S.C.A. § 1681s-2(c) states that 15 U.S.C.A. § 1681n and 15 U.S.C.A. § 1681o do not apply to violations of 1681s-2(a), which describes the duties of those who furnish information to credit reporting agencies. Here, the allegations are that the defendants furnished incomplete information to credit reporting agencies, so 15 U.S.C.A. § 1681n and 15 U.S.C.A. § 1681o do not apply.

Some courts have permitted a private cause of action brought against those who furnished information to credit reporting agencies under 1681s-2(b). However, that section governs the duties of furnishers of information when they are informed of a dispute by a credit reporting agency. That private

cause of action is not relevant here because the plaintiff has not alleged that any credit reporting agency issued a notice of dispute to any of the defendants regarding information furnished by the defendants to the credit reporting agency regarding the plaintiff.

Because the plaintiff has failed to plead a viable FCRA claim and allowing the plaintiff to re-plead the FCRA claim according to the plaintiff's revised theory would be futile, the Court will dismiss FCRA claim against each defendant with prejudice.

D.   <u>Fraud and Constructive Fraud</u>

The plaintiff alleges that the defendants made fraudulent representations about the amount the plaintiff owed on his mortgage both to the plaintiff himself and to others.

These fraud allegations, however, do not have the particularity required under Rule 9 of the Federal Rules of Civil Procedure.  <u>See</u> <u>Rolo v. City Investing Co. Liquidating Trust</u>, 155 F.3d 644, 658 (3d Cir. 1998) ("The purpose of Rule 9(b) is to provide notice of the 'precise misconduct' with which defendants are charged and to prevent false or unsubstantiated charges."), abrogated on other grounds.  <u>See also</u> <u>Lum v. Bank of Am.</u>, 361 F.3d 217, 224 (3d Cir. 2004), ("Plaintiffs may satisfy this

requirement by pleading the date, place or time of the fraud, or through alternative means of injecting precision and some measure of substantiation into their allegations of fraud.") (internal citations and quotations omitted), abrogated on other grounds.

The complaint lacks critical details, such as who made what misrepresentations to whom at what time, and groups the defendants improperly together in conclusory allegations.  For instance, the plaintiff baldly alleges that, "[s]ince June 2008, [defendants] engaged in misrepresentations, withhold information and made fraudulent utterances with intentions that the plaintiff would be induced to default his mortgage or enter into a fraudulent mortgage."  Am. Compl. ¶ 68.  The plaintiff's proposed second amended complaint suffers from the same defects.  See, e.g., Sec. Am. Compl. ¶ 49 ([Defendants] "have engaged in deceptive, unfair, and fraudulent activities respecting plaintiff's mortgage, in servicing, in collecting and in the foreclosure process.").

Despite multiple opportunities to provide the requisite details of a fraud claim, the plaintiff has failed to meet the standard for a fraud claim required under Rule 9.  The Court will, therefore, dismiss the plaintiff's fraud claims against each defendant with prejudice.

E.    Pennsylvania Unfair Trade Practices and Consumer
      Protection Law

      The plaintiff fails to specify which portion of the
Pennsylvania Unfair Trade Practices and Consumer Protection Law
("UTPCPL") the defendants violated, so the claim is analyzed
under the catch-all provision, which prohibits "any other
fraudulent or deceptive conduct which creates a likelihood of
confusion or of misunderstanding." 73 Pa. Stat. Ann. § 201-
2(4)(xxi).

      District courts have reasoned that a plaintiff alleging
a deceptive conduct claim must satisfy three elements: (1) facts
showing a deceptive act, that is conduct that is likely to
deceive a consumer acting reasonably under similar circumstances;
(2) justifiable reliance, meaning plaintiff justifiably engaged
in some detrimental activity because of defendants'
misrepresentation or deceptive conduct; (3) the justifiable
reliance caused ascertainable loss.  See Vassalotti v. Wells
Fargo Bank, N.A., 732 F. Supp. 2d 503, 510 (E.D. Pa. 2010),
quoting Seldon v. Home Loan Services, Inc., 647 F. Supp. 2d 451,
470 (E.D. Pa. 2009).

      The plaintiff alleges that the defendants misled him
regarding reaching a settlement in the foreclosure litigation and
effecting a loan reinstatement, but the problem is that the
plaintiff has not shown how he detrimentally relied on those

15

misrepresentations in a way that led to his harm.  The plaintiff claims he kept trying to make his regular mortgage payments even after the alleged misrepresentations so it appears he did not rely on the alleged misrepresentations in a way that altered his behavior.

Without detrimental reliance, the plaintiff's UTPCPL count fails to state a claim upon which relief can be granted. The Court will dismiss the UTPCPL count against each defendant with prejudice.


F.   <u>Breach of Contract and Unjust Enrichment</u>

The plaintiff alleges that the defendants breached the mortgage contract by refusing to accept loan payments he tried to make, adding improper fees and costs to his loan balance, and refusing to arbitrate the dispute.

At this point, the contract claim is hard to evaluate because the plaintiff does not specify what he means by the mortgage contract and does not point to any particular provisions of that contract.

The only portion of a contract submitted to the Court is an arbitration rider that was attached to Kondaur's motion to dismiss.  The arbitration rider states that all disputes arising from the loan shall be resolved by binding arbitration.

Kondaur argues that the arbitration clause was not violated because there is an exclusion paragraph that states the requirement to arbitrate does not limit the lenders rights to foreclose against or sell the property.

That same exclusion paragraph explains that if the borrower appears in and contests any judicial proceeding initiated by the lender under the exclusion, then upon request of borrower such judicial proceedings shall be stayed or dismissed and the matter shall proceed to arbitration.

The plaintiff alleges that he requested an arbitration, but the terms of the arbitration rider were apparently not invoked because the mortgage foreclosure action proceeded and was not stayed.

At this point, the plaintiff has not adequately alleged any breach of contract claim.  However, this dispute at its heart turns on plaintiff's assertion that the defendants violated the terms of the mortgage agreement by improperly increasing his balance and refusing to accept his payments.  Those claims sound in breach of contract and may be colorable if the plaintiff re-pleads them in a more viable manner.

Therefore, the Court will dismiss the breach of contract and unjust enrichment claims against the defendants without prejudice.

17

G.   <u>Corporate Negligence</u>

The plaintiff brings a count of corporate negligence against the defendants, alleging that they failed to use reasonable care in discharging their responsibilities and duty of care under law to the plaintiff.

The defendants argue that the corporate negligence cause of action does not extend beyond entities providing health care services.  <u>See</u> <u>Johnson v. Stempler</u>, CIV.A. 00-711, 2005 WL 119575 (E.D. Pa. Jan. 20, 2005) <u>aff'd,</u> 373 F. App'x 151 (3d Cir. 2010)("Under Pennsylvania law, a claim for corporate negligence exists if a hospital or similar institution can be shown to have had actual or constructive knowledge of a defect or procedure that created harm to an injured party, and if the hospital or institution's negligence was a substantial factor in bringing about this harm.") citing <u>Thompson v. Nason Hosp.</u>, 527 Pa. 330, 341, 591 A.2d 703, 708 (1991).  <u>But see</u> <u>Jakubiec v. Camp Nock-A-Mixon, Inc.</u>, denying a non-healthcare provider's motion to dismiss a corporate negligence claim.  CIV.A. 10-4244, 2011 WL 1042301 (E.D. Pa. Mar. 18, 2011).

The Pennsylvania Supreme Court recently addressed the scope of corporate negligence in <u>Scampone v. Highland Park Care Ctr., LLC</u>, 57 A.3d 582 (Pa. 2012).  The <u>Scampone</u> court held that a nursing home facility and management company were potentially subject to direct liability for corporate negligence.

18

After Scampone, it is clear that Thompson should not be read to limit the corporate negligence cause of action strictly to hospitals.  Instead, courts should determine if a corporate negligence claim is viable by determining if the defendant owes a duty of care to the plaintiff by applying the factors stated in the Pennsylvania Supreme Court's decision in Althaus ex rel. Althaus v. Cohen, 562 Pa. 547, 553, 756 A.2d 1166, 1169 (2000), or Section 323 of the Restatement (Second) of Torts.

In Althaus, the Pennsylvania Supreme Court explained, "[t]he determination of whether a duty exists in a particular case involves the weighing of several discrete factors which include: (1) the relationship between the parties; (2) the social utility of the actor's conduct; (3) the nature of the risk imposed and foreseeability of the harm incurred; (4) the consequences of imposing a duty upon the actor; and (5) the overall public interest in the proposed solution." Althaus at 553.

Section 323 of the Restatement (Second) of Torts explains, "[o]ne who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if (a) his failure to exercise such care

19

increases the risk of such harm, or (b) the harm is suffered because of the other's reliance upon the undertaking." Restatement (Second) of Torts § 323.

Under either standard, there is no basis to conclude that the defendants owed the plaintiff a duty that could be the basis of a corporate negligence claim.  With respect to the Althaus factors, the relationship between the defendants and the plaintiff consisted of commercial loan contracts and the nature of the risk and foreseeability of the harm incurred would not argue in favor of a duty of care between the defendants and the plaintiff.

The Restatement factors contemplate a physical harm that results from the failure to exercise reasonable care.  As the defendants' actions resulted in no such physical harm to the plaintiff, it is hard to see how a duty of care could be found under the Restatement framework.

Indeed, the Pennsylvania Commonwealth Court has written that, "[a] lender owes no duty of care to his borrower." Rousseau v. City of Philadelphia, 100 Pa. Cmwlth. 173, 177, 514 A.2d 649, 652 (1986).

Therefore, the Court concludes that the plaintiff fails to state a claim for corporate negligence upon which relief can be granted because the defendants did not owe a duty of care to

the plaintiff that could be the basis for a corporate negligence claim.  The Court will dismiss the corporate negligence claim against each defendant with prejudice.

IV.  Conclusion

The Court grants the defendants' motion to dismiss and dismisses the Truth in Lending Act, Fair Debt Collection Practices Act, Fair Credit Reporting Act, fraud and constructive fraud, Pennsylvania Unfair Trade Practices and Consumer Protection Law, and corporate negligence claims with prejudice. The breach of contract claim and unjust enrichment claim is dismissed without prejudice.

An appropriate order follows.